**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Gloria A. Sinibaldi**

   **v.**                                    Case No. 16-cv-181-PB
                                          Opinion No. 2017 DNH 113
**Nancy A. Berryhill, Acting**
**Commissioner, Social**
**Security Administration**



**MEMORANDUM AND ORDER**


Gloria Sinibaldi moves to reverse the Acting Commissioner's

decision to deny her application for Social Security disability

insurance benefits under Title II of the Social Security Act, 42

U.S.C. § 423.  The Acting Commissioner, in turn, seeks an order

affirming her decision.  For the reasons that follow, the

decision of the Acting Commissioner, as announced by the

Administrative Law Judge ("ALJ"), is affirmed.



**I.  STANDARD OF REVIEW**

The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without

> remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to

2

draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (citations omitted).  Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988) (per curiam).  Finally, when determining whether a decision of the Acting Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II.  <u>BACKGROUND</u>

The parties have submitted a Joint Statement of Material Facts.  That statement, doc. no. 13, is part of the court's record and will be summarized here, rather than repeated in full.

In May 2013, Sinibaldi was seen by Dr. John Kustan for a radiological examination.  He reported the following impressions:

3

> Stable bone density in the left hip, still in the osteopenia range.
>
> Increased bone density in the left femoral neck, now in the osteopenia range.
>
> Decreased bone density in the lumbar spine, still in the osteoporosis range.

Administrative Transcript (hereinafter "Tr.") 263.[1]

After Sinibaldi applied for disability insurance benefits, the Social Security Administration ("SSA") sent her to Dr. John Fothergill for a consultative examination.  He diagnosed her with headache syndromes, anxiety, and osteoporosis.  He concluded his report this way:

> Patient's headaches to me sounds like she has both migraine headaches as well as probably some tension type headaches.  Her osteoporosis is documented by [a] bone scan but I'm not sure how that affects her overall.  Certainly she has some anxiety.  As far as how these problems effect [sic] her ability to sit she states that if she sits too long she'll have some pain in her hips.  If she stands greater than an hour she'll have some pain in the back.  . . . [S]he does walk two miles a day.  Occasionally she'll develop some right hip pain.  . . . [S]he just doesn't lift much because she has very little upper body strength and for the same reason she doesn't carry much at all.

---

[1] Osteopenia is "[d]ecreased calcification or density of bone."  Stedman's Medical Dictionary 1391 (28th ed. 2006).  Osteoporosis is "[r]eduction in the quantity of bone or atrophy of skeletal tissue; an age-related disorder characterized by decreased bone mass and loss of normal skeletal microarchitecture, leading to increased susceptibility to fractures."  Id.

> Bending is something she can do, but after a while getting back up becomes problematic.

Tr. 292. Based upon Dr. Fothergill's report, an SSA medical consultant, Dr. John MacEachran, determined that Sinibaldi did not suffer from any severe medically determinable impairment. Presumably for that reason, the Disability Determination Explanation form prepared by the SSA reports no formal assessment of Sinibaldi's residual functional capacity ("RFC").[2]

After the SSA denied Sinibaldi's claim, she received a hearing before an ALJ, who issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. Through the date last insured, the claimant had the severe impairments of generalized anxiety disorder and major depressive disorder (20 CFR 404.1520(c)).
>
> . . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional

---

[2] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

capacity to perform a full range of work at all exertional levels except that she was capable of only work that did not include: interaction with the general public; fast paced work, such as assembly line belt paced work or timed work; and she was capable of only brief and superficial interaction with co-workers and supervisors.

. . . .

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

. . . .

10.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

Tr. 22, 23, 24, 30, 31.

### III.  DISCUSSION

#### A.  The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether the ALJ correctly determined that Sinibaldi was not under a disability between August 15, 2010,

6

and June 30, 2013.

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)). Finally,

> [i]n assessing a disability claim, the [Acting

7

Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

**B.    Sinibaldi's Claims**

Sinibaldi claims that the ALJ committed two errors in assessing her RFC: failing to properly consider her osteoporosis, and failing to properly consider Dr. Fothergill's opinion.   Neither claim is persuasive.

1.    Osteoporosis

Sinibaldi summarizes her claim concerning the ALJ's consideration of her osteoporosis this way:

All impairments must be considered by the adjudicator.  Osteoporosis is an impairment. Therefore, Osteoporosis should have been considered. The ALJ did not render a finding whether osteoporosis was an impairment, did not render a finding whether it was severe or non-severe, and did not find any exertional limitations in the RFC.

Cl.'s Mem. of Law, doc. no. 8-1 at 4.  The court can discern no error in the ALJ's consideration of claimant's osteoporosis.

Plainly, the ALJ was aware of that diagnosis; she devoted a

8

full paragraph to Dr. Fothergill's report, and stated that claimant's "osteoporosis was diagnosed about two years earlier during a physical examination and worsening bone density had been diagnosed just recently, for which she was prescribed Fosamax." Tr. 26. Moreover, the court cannot agree that the ALJ failed to render a finding about the severity of claimant's osteoporosis. At step 2, the ALJ found that claimant's generalized anxiety disorder and her major depressive disorder were severe impairments. While she did not discuss osteoporosis in that section of her decision, the fact that she did not include osteoporosis in the list of claimant's severe impairments can only be construed as a finding that osteoporosis was not a severe impairment. And, indeed, that finding is supported by substantial evidence, Dr. MacEachran's determination that "[n]o severe [medically determinable impairment] is established." Tr. 81.

Giving claimant the benefit of the doubt, respondent posits that her real claim is not that the ALJ ignored her osteoporosis but, rather, that the ALJ erred by failing to find that condition to be a severe impairment. But, as the court has noted, there is substantial evidence to support a finding that claimant's osteoporosis was not a severe impairment. Beyond

9

that, as respondent correctly notes, an erroneous determination that an impairment is not severe is a harmless error, so long as the ALJ has found other impairments to be severe. See, e.g., Reynolds v. Colvin, No. 14-cv-439-LM, 2015 WL 2452718, at *5 (D.N.H. May 22, 2015) (quoting Anderson v. Colvin, No. 14-cv-15-LM, 2014 WL 5605124, at *5 (D.N.H. Nov. 4, 2014); citing Chabot v. U.S. Soc. Sec. Admin., No. 13-cv-126-PB, 2014 WL 2106498, at *9 (D.N.H. May 20, 2014)). Here, the ALJ found two severe impairments, acknowledged her obligation to consider both severe and non-severe impairments when determining claimant's RFC, see Tr. 21, and continued through all five steps of the sequential evaluation process. Thus, even if the ALJ erred by finding claimant's osteoporosis not to be a severe impairment, that error was harmless.

Finally, claimant argues that the ALJ erred by failing to incorporate any limitations resulting from osteoporosis into her RFC. The record, however, includes no acceptable evidence on which the ALJ could have based any such limitation. In his report, Dr. Fothergill stated that claimant's "osteoporosis is documented by [a] bone scan," Tr. 292, but that he was "not sure how that affects her overall," id. Thus, Dr. Fothergill's report is not substantial evidence of a functional limitation

10

resulting from claimant's osteoporosis. Moreover, in the absence of a medical opinion positing such a limitation, the ALJ would have erred by imposing one on her own because an "ALJ is not qualified to assess residual functional capacity based on a bare medical record." Dubord v. Colvin, No. 16-cv-026-LM, 2016 WL 6462268, at *8 (D.N.H. Nov. 1, 2016) (quoting Gordils v. Sec'y of HHS, 921 F.2d 327, 329 (1st Cir. 1990). In short, the ALJ did not err by declining to impose limitations resulting from claimant's osteoporosis.

## 2. Dr. Fothergill's Opinion

Petitioner summarizes her second claim of error in the following way:

> [A]ll medical opinions must be considered by the adjudicator. Dr. Fothergill issued an opinion. Therefore, Dr. Fothergill's opinion and functional limitations should have been considered. Though this error is twofold, it is intertwined because Dr. Fothergill is the only medical opinion that issued functional limitations for physical problems.

Cl.'s Mem. of Law, doc. no. 8-1 at 4. That claim fails because it is based upon a mischaracterization of Dr. Fothergill's report.

The applicable Social Security regulations provide that the SSA "will always consider the medical opinions in [a claimant's] case record," 20 C.F.R. § 404.1527(b), and "will evaluate every

11

medical opinion [it] receive[s]," 20 C.F.R. § 1527(c). The regulations also explain that

> [m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).

In claimant's view, Dr. Fothergill's report includes a favorable medical opinion that the ALJ failed to properly consider. She is mistaken. Rather than making a statement about physical restrictions resulting from claimant's osteoporosis, Dr. Fothergill expressly stated that he was "<u>not sure</u> how [osteoporosis] affects her overall." Tr. 292 (emphasis added). That statement hardly counts as substantial evidence that would support the inclusion of a limitation based on osteoporosis in claimant's RFC. To be sure, after he stated that he did not know how osteoporosis affected claimant's functional capacity, Dr. Fothergill reported various statements claimant had made to him about her functional capacity. But, it is well established that "[s]tatements in a medical record that merely repeat a claimant's subjective complaints are not medical opinions." Tann v. Berryhill, No. 16-cv-449-JD, 2017 WL

12

1326235, at \*5 n.6 (D.N.H. Apr. 10, 2017) (citing Hesson v. Colvin, No. 2:15-cv-106-DBH, 2015 WL 7259747, (D. Me. Sept. 29, 2015); 20 C.F.R. § 416.927(a)(2)).  Here, Dr. Fothergill repeated claimant's complaints about problems with bending but did not himself opine that she was limited in her ability to engage in bending.  In other words, notwithstanding claimant's assertion to the contrary, Dr. Fothergill did not issue any functional limitations resulting from claimant's osteoporosis.  So, there was no medical opinion for the ALJ to consider, much an opinion stating a functional limitation that could have been incorporated into Sinibaldi's RFC.  For that reason, the court discerns no error in the ALJ's consideration of Dr. Fothergill's report.

## IV.  CONCLUSION

Because the ALJ committed neither a legal nor a factual error in evaluating Sinibaldi's claim, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, doc. no. 8, is denied, and the Acting Commissioner's motion for an order affirming her decision, doc. no. 12, is granted.  The clerk of the court shall enter judgment

in accordance with this order and close the case.

SO ORDERED.


                              /s/Paul Barbadoro
                              Paul Barbadoro
                              United States District Judge


June 12, 2017

cc:   Laurie Smith Young, Esq.
      T. David Plourde, Esq.

14